UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GAIL WROBBEL,

                Plaintiff,              No. 07-CV-10110-DT

vs.                                 Hon. Gerald E. Rosen

INTERNATIONAL BROTHERHOOD
OF ELECTRICAL WORKERS, LOCAL 17,

                Defendant.

_____/

OPINION AND ORDER REGARDING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on_____July 28, 2009_____

PRESENT:  Honorable Gerald E. Rosen
                   Chief Judge, United States District Court

## I.  INTRODUCTION

This is a sex discrimination action brought by Plaintiff Gail Wrobbel pursuant to

Title VII and the Michigan Elliott-Larsen Civil Rights Act against her Union, the

International Brotherhood of Electrical Workers ("IBEW") Local 17.  In her First

Amended Complaint,[1] Plaintiff alleges that, in March 2004, the Union (1) refused to refer

_____

[1]  Plaintiff's original Complaint, filed in January 2007, was brought only pursuant to Title VII and named three Defendants -- Asplundh Tree Expert Company, Asplundh Construction Company, and IBEW Local 17.  Asplundh Tree Expert Company was dismissed from the case by stipulation of the parties in July 2007.  Then, in  October

1

her for work with Asplundh Construction Corporation and (2) conspired with Asplundh to

deny her employment because she is a female.

This matter is now before the Court on Defendant IBEW Local 17's Motion for

Summary Judgment.  Plaintiff has responded to Defendant's Motion and Defendant has

replied.  Having reviewed and considered the parties' briefs and supporting evidence, the

Court has determined that oral argument is not necessary.  Therefore, pursuant to Eastern

District of Michigan Local Rule 7.1(e)(2), this matter will be decided on the briefs.  This

Opinion and Order sets forth the Court's ruling.

## II.  PERTINENT FACTS

Plaintiff Gail Wrobbel has worked in the electrical maintenance trade for

approximately 12 years during which time she has been a member of IBEW Local 17.

During the course of her career, Ms. Wrobbel worked for various contractors that

performed overhead line construction and maintenance work for Detroit Edison.

---

2008, Plaintiff resolved her dispute with Defendant Asplundh Construction Company,
leaving IBEW Local 17 as the only Defendant in this action.  The parties thereafter
stipulated to Plaintiff's filing of an Amended Complaint against the Union, only, which
also added a claim under the Michigan Elliott-Larsen Act.  *See* Amended Complaint, filed
October 31, 2008 [Dkt. No. 116.]  (Plaintiff had previously filed a separate Elliott-Larsen
complaint in Wayne County Circuit Court which was removed to this Court on March 7,
2007.  *See Wrobbel v. Asplundh, et al.*, Case No. 07-10988.  Plaintiff thereafter moved to
remand the state law complaint back to state court.  *See id.*, Dkt. No. 13.  The Court
granted Plaintiff's motion and on April 24, 2008 remanded this second case back to state
court for lack of federal subject matter jurisdiction.  *See id.*, Dkt. No. 111.  Plaintiff's
Count 2 in this case contains verbatim the identical allegations made against the Union in
the complaint that was remanded to State court.  *Compare,* Plaintiff's First Amended
Complaint with Plaintiff's Complaint in Case No. 07-10988 ¶¶ 2, 5, 8-21, 23, 25-29.)

All of the contractors providing overhead line construction services to Detroit
Edison are signatories to a multi-employer collective bargaining agreement between the
American Line Builders Chapter, NECA, and IBEW Local 17 (the "CBA").  The job
classifications governed by the collective bargaining agreement include 1) journeyman
linemen; 2) operators, material handlers, and pole helpers; and 3) groundmen and truck
drivers.

THE COLLECTIVELY-BARGAINED WORK REFERRAL SYSTEM

The CBA provides  a procedure for referral of applicants for employment pursuant
to which Local 17 is the sole and exclusive source of referral of job applicants.  [*See*
CBA, § 3.02, Ex. A to Affidavit of Timothy Head.]   However, the employer has the
absolute right to reject any applicant for employment.  *Id.* at § 3.03.  Under the
agreement, Local 17 is required to keep an "Out of Work List" (the "List") which lists the
applicants within each job classification in chronological order of the dates they register
their availability for employment.  *Id.* at § 3.11.  Seniority plays no part in the List.
Separate lists are maintained for the different job classifications.   *Id.* at §§ 3.05; 3.13.

The CBA, however, only requires that Local 17 refer the applicant for employment
in the order of his/her place on the List; no manner of referral is specified.  Typically,
employees are given a referral slip by the Union to take to the prospective employer.
However, Timothy Head, Local 17's Assistant Business Manager, testified in his
deposition that a less formal procedure for referral is sometimes used.  He testified that
often the employer would simply call the Local 17 business agent, inform him of the

3

number of applicants needed, and ask the business agent to go through the List and
verbally refer each applicant in the order of his or her place on the List.  [Head Dep., pp.
110-111.]  According to Head, this practice was implemented because the Union
members did not want to be inconvenienced and/or embarrassed by going to the Union
Hall to pick up a referral slip and then driving to the contractors location, only to be
rejected by the employer and "turned around" back to the Union Hall.  *Id.*  The use of
both referral slips and telephonic referrals has been confirmed by a number of
superintendent/managers of contractor/members of the American Line Builders who had
a collective bargaining relationship with Local 17.  These managers have testified that
applicants are frequently referred via telephone conversations between the contractor's
superintendent/manager and an Assistant Business Manager for Local 17.  [*See* Affidavit
of Dale A Cole, General Foreman and Superintendent of N.G. Gilbert Company,
Defendant's Ex. F; Affidavit of Patrick J. Raftary, General Foreman of Harlan Electric,
Defendant's Ex. G; Affidavit of David E. Shea, Superintendent of M.J. Electric, LLC,
Defendant's Ex. H.][2]

When pursuing a telephone referral, these managers would call Local 17 Assistant
Business Manager Tim Head, or his predecessor, and request one or more applicants for a
particular classification.  They would then ask Mr. Head or his predecessor, "Who are
you sending?" understood as "Who is the next applicant on the List?"  After Mr. Head

---

[2]  None of these managers, however, were involved in the disputed referral at issue
in this case.

identified the first applicant in order of his or her place on the List, the manager would

either indicate, "Send him (or her)" or "We don't want him," understood as the employer

exercising his right of rejection under the CBA.  Head or his predecessor would then

identify the next applicant in order of his or her place on the List.  Any applicant who is

rejected, whether in person or over the telephone is returned to his or her place on the

List.  CBA § 3.13; Head Dep. p. 25.

PLAINTIFF'S WORK IN THE ELECTRICAL MAINTENANCE INDUSTRY

Plaintiff began her career in the electrical maintenance industry with Harlan

Electric.  From 1995 to 2004, Ms. Wrobbel worked at Harlan as a material handler a/k/a

yard person.  She was referred to Harlan in order of her place on the List.[3]  In March

2004, Asplundh Construction Company won the contract to perform overhead line

construction and maintenance work for Edison that, until that time, had been held by

Harlan.  As a result, all of the employees of Harlan who had been performing work in

connection with the Edison contract, including Plaintiff, were laid off on Friday, March

19, 2004.  All of those employees, including those seeking to be re-hired in their previous

positions now taken over by Asplundh, had to follow the referral procedure prescribed by

the CBA for new work.

On the following Monday, March 22, 2004, in accordance with the CBA referral

---

[3]  Plaintiff testified in her deposition that she went to the Local 17 Union Hall
several years earlier, while she was working in a purchasing/stock room position at
Zantop Airlines, and "put her name on the books" to be called when a position became
available in the electrical maintenance industry.  [Plaintiff's 6/11/07 Dep., pp. 34-36.]

5

procedure, Wrobbel went to the offices of Local 17 and signed the List.  Local 17's

Assistant Business Manager Timothy Head testified that he subsequently referred

Plaintiff  telephonically to Asplundh for rehire in her former material handler position but

that Asplundh's manager, William Catalfio, verbally rejected her.  [*See* Head Dep., pp.

46-59; Catalfio Dep., pp. 154-161.]

Plaintiff maintains, however, that all male applicants hired by Asplundh were

referred by Local 17 by giving the worker a referral slip and sending the worker with the

slip to the contractor.  In support of her contention, she points out that Asplundh

represented to the EEOC that it did not hire her because "other applicants either (1) had

previously appeared with their 'referral slips,' and had already been selected; or (2) had

more superior capabilities for performing the job functions."  [*See* Asplundh's Response

to Charge of Discrimination, Plaintiff's Ex. L (emphasis added).][4]  Plaintiff's position is

that Local 17 did not give her a referral slip because she is a woman.[5]

---

[4]  In her Brief, Plaintiff ignores the full text of Asplundh's Response to the EEOC
Charge -- including the entire part (2) of that Response -- representing instead only that
"Asplundh represented to the EEOC that it did not hire Wrobbel because "other
applicants...had previously appeared with their 'referral slips.'"  [Plaintiff's Brief, p. 7.]

[5]  Although never alleged in her Complaint or Amended Complaint, in addition to
her claim that the Union discriminated against by not giving her a referral slip in March
2004, in her summary judgment response brief, she also complains of an alleged
subsequent act of discrimination by the Union in April 2004.  She claims that while she
was still on the Out of Work List following her layoff from Harlan Electric, Asplundh had
an opening in the exact position Wrobbel had held for nine years as a yardman at its
Tireman location.  She contends, however, that a male named Mike Fielding had been
given a "heads up" on the anticipated Tireman opening by someone at Asplundh, and he
quit his lower paying job as a light bulb washer for Harlan, went to the union hall, got on

Plaintiff also claims that Local 17 conspired with Asplundh to deny her employment. Her claim is that the Union knew that Asplundh and Mr. Catalfio did not like female workers and not only stood passively by and took no affirmative action to prevent Catalfio from rejecting her and all female referrals despite their positions on the Out of Work List but also actively "caused or attempted to cause" Asplundh to discriminate in its hiring by not giving her a referral slip. Therefore, she maintains that Local 17 can be held liable for the employer (Asplundh)'s discriminatory animus.

## III. DISCUSSION

### A. STANDARDS APPLICABLE TO MOTIONS FOR SUMMARY JUDGMENT

Summary judgment is proper "'if the pleadings, depositions, answer to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" Fed. R. Civ. P. 56(c).

Three 1986 Supreme Court cases -- *Matsushita Electrical Industrial Co. v. Zenith*

---

the Out of Work List, and was immediately referred back out for the Tireman yardman position. Wrobbel claims that she should have been referred to the opening to Asplundh. Instead, Fielding, whom Wrobbel claims signed the List weeks after she did, got the Asplundh position and Wrobbel was referred to the lower-paying lamp washer job at Harlan that Fielding had vacated. Wrobbel offers no evidentiary support for this claim -- other than her own post-discovery/post-summary judgment affidavit. Plaintiff never mentioned this claim at any time during her two-day deposition despite having been given ample opportunity to do so. There is further no indication that Plaintiff provided information concerning this claim in any interrogatory answers. Therefore, the Court will not consider this claim at this late stage of the action. *See Aerel S.R.L. v. PCC Airfoils, L.L.C.,* 448 F.3d 899, 908 (6th Cir.2006).

7

*Radio Corp.*, 475 U.S. 574 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986);

and *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) -- ushered in a "new era" in the

standards of review for a summary judgment motion.  These cases, in the aggregate,

lowered the movant's burden on a summary judgment motion.[6]  According to the *Celotex*

Court,

> In our view, the plain language of Rule 56(c) mandates the entry of summary
> judgment, after adequate time for discovery and upon motion, against a party who
> fails to make a showing sufficient to establish the existence of an element essential
> to that party's case, and on which that party will bear the burden of proof.

*Celotex*, 477 U.S. at 322.

After reviewing the above trilogy, the Sixth Circuit established a series of

principles to be applied to motions for summary judgment.  They are summarized as

follows:

> * The movant must meet the initial burden of showing "the absence of a genuine
> issue of material fact" as to an essential element of the non-movant's case.  This
> burden may be met by pointing out to the court that the respondent, having had
> sufficient opportunity for discovery, has no evidence to support an essential
> element of his or her case.

> * The respondent cannot rely on the hope that the trier of fact will disbelieve the
> movant's denial of a disputed fact, but must "present affirmative evidence in order
> to defeat a properly supported motion for summary judgment."

> * The trial court no longer has the duty to search the entire record to establish that
> it is bereft of a genuine issue of material fact.

---

[6]"[T]aken together these three cases signal to the lower courts that summary
judgment can be relied upon more so than in the past to weed out frivolous lawsuits and
avoid wasteful trials. . . ."  10A C. Wright, A. Miller, M. Kane, <u>Federal Practice &
Procedure 3d</u>, § 2727.

> \* The trial court has more discretion than in the "old era" in evaluating the respondent's evidence.  The respondent  must do "do more than simply show that there is some metaphysical doubt as to the material facts."  Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion should be granted.  The trial court has at least some discretion to determine whether the respondent's claim is plausible.

*Betkerur v. Aultman Hospital Association*, 78 F.3d 1079, 1087 (6th Cir. 1996).  *See also, Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989).  The Court will apply the foregoing standards in deciding Defendant's Motion for Summary Judgment in this case.

B.   *PRIMA FACIE* PROOF OF DISCRIMINATION

In her Amended Complaint in this action, Plaintiff Wrobbel claims that Local 17 (1) discriminatorily denied her a referral to Asplundh for employment in March 2004 in violation of  42 U.S.C. § 2000e-2(c)(1) and (2) and M.C.L. § 37.2204(b);[7] and (2) conspired with Asplundh to prevent Asplundh from hiring her because she is woman in violation of 42 U.S.C. § 2000e-2(c)(3) and M.C.L. § 37.2701(b).[8]  *See* First Amended Complaint ¶ 18.   The Court will address each of these claims seriatim.

---

[7]  In her Brief, Plaintiff erroneously cites M.C.L. § 37.2202(1)(b) as the basis for her Michigan claims.  § 37.2202 sets forth an *employer's* prohibited acts.  It is the provisions of § 37.2204 that apply to *labor unions*. Both the state and federal statute make it unlawful for a labor organization to "fail or refuse to refer for employment any individual. . . because of. . . sex. . . ."  42 U.S.C. 2000e-2(c)(2); M.C.L. § 37.2204(b).

[8]  42 U.S.C. § 2000e-2(c)(3) provides that it is unlawful for a labor organization "to cause or attempt to cause an employer to discriminate against an individual in violation of this section."  M.C.L. § 37.2701(b) makes it unlawful for "[t]wo or more persons. . . to conspire to. . . aid, abet, incite, compel or coerce a person to engage in a violation of this act."

9

1.    <u>Denial of Referral</u>

It is well-established that the burden is on a discrimination plaintiff -- under both federal and Michigan law -- to establish a *prima facie* case of discrimination.  *See Lautermilch v. Findlay City Schools*, 314 F.3d 271, 275 (6th Cir. 2003), *cert. denied*, 540 U.S. 813 (2003); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1972); *Texas Department of Community Affairs v. Burdine*, 450 U.S. 148, 156 (1981); *Carden v. General Motors*, 156 Mich. App. 202, 210 (1986), *app. denied*, 428 Mich. 891 (1987).

A Title VII plaintiff may establish a *prima facie* case of discrimination either by presenting direct evidence of intentional discrimination by the defendant,  *Terbovitz v. Fiscal Court*, 825 F.2d 111, 114-15 (6th Cir.1987) (citing *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121, 105 S.Ct. 613, 621-22 (1985)), or by showing the existence of circumstantial evidence which creates an inference of discrimination.  *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824.  *See Talley v. Bravo Pitino Restaurant, Ltd.*, 61 F.3d 1241, 1246  (6th Cir. 1995).  Similarly, a plaintiff can establish a claim of unlawful discrimination under Michigan law either (1) by producing direct evidence of discrimination or (2) by presenting a *prima facie* case of discrimination in accordance with the *McDonnell Douglas/Burdine* framework.  *Hazle v. Ford Motor Co.*, 464 Mich. 456, 462-63, 628 N.W.2d 515, 520-21 (2001); *Town v. Michigan Bell Telephone Co.*, 455 Mich. 688, 694-95, 568 N.W.2d 64, 67-68 (1997).  Plaintiff here contends that she can make out her claim of discrimination under both theories.

a.    <u>Plaintiff Has Failed to Produce Direct Evidence of Sex Discrimination</u>

10

A plaintiff may establish intentional discrimination on the part of his or her employer by presenting credible, direct evidence of discriminatory intent on the part of the decision-maker.  *See Terbovitz v. Fiscal Court of Adair County*, 825 F.2d at 114-15; *Hazle v. Ford Motor Co*., 464 Mich. at 462-63.   "Direct evidence" of discrimination is "evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions."  *See Talley,* 61 F.3d at 1268;  *Hazle v. Ford Motor Co.,* 464 Mich. at 462, 638 N.W.2d at 520 (quoting *Jacklyn v. Schering-Plough Healthcare Products Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 1999)).  When a plaintiff can cite direct evidence of discrimination, the *McDonnell Douglas*/*Burdine* shifting burdens of proof are not applicable.  *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121, 105 S.Ct. 613 (1985); *DeBrow v. Century 21 Great Lakes, Inc*.,  463 Mich. 534, 539, 620 N.W.2d 836, 838 (2001) .  The presentation of direct evidence is generally sufficient to submit the plaintiff's case to the jury.  *Harrison v. Olde Financial Corp*, 225 Mich. App. 601, 610; 572 NW2d 679 (1997).  However, to withstand summary judgment, the plaintiff's evidence must be admissible.  Fed. R. Civ. P. 56(e).  Inadmissible hearsay evidence cannot be considered.  *Hartsel v. Keys*, 87 F.3d 795, 803 (6th Cir. 1996), *cert. denied*, 519 U.S. 1055 (1997); *Jacklyn v. Schering-Plough Healthcare Prod. Sales Corp.*, 176 F.3d 921, 927 (6th Cir. 1999).

Plaintiff here points to the following as "direct evidence" of sex discrimination: First, she claims that Local 17 has never had any female officer or executive board

member in its entire history.[9]  Second, she claims that "union head" Charlie

Kerszykowski, described women as "cunts" at union meetings, and Asplundh official,

William Catalfio, (who several years earlier had been a Local 17 employee), did not want

women working for him at Asplundh and said that "having a female employee is nothing

but trouble."  Third, Plaintiff points to Judge Battani's ruling on the defendant's motion

for summary judgment in the case of *Debra Stout v. Asplundh Tree Expert Co*., 06-13964,

finding that the plaintiff in that case had presented "direct evidence"showing that she was

not referred in the order that her name appeared on the union out-of-work list.[10]

Contrary to Plaintiff's assertions, none of this "evidence" constitutes "direct"

evidence of discrimination.

First of all, statements of persons who were not involved in the employment

decision at issue do not constitute "direct evidence" of discrimination.  *Carter v.*

*University of Toledo*, 349 F.3d 269, 273 (6th Cir. 2003).  In *Carter*, the Sixth Circuit held

that a university provost's statements that the dean of the plaintiff's department was racist

did not constitute direct evidence of race discrimination since the vice provost played no

part in the decision to terminate the plaintiff's employment.

_____

[9]  Plaintiff merely makes this assertion in her Response Brief; she offers no
evidentiary support for the statement.  The Union disputes Plaintiff's claim.  As indicated
in the supplemental affidavit of Timothy Head, filed in December 2007 -- i.e., long before
Plaintiff filed her Brief -- Donna J. Weaver, a female, served on Local 17's Executive
Board for at least two years, from 2000-2001.  [*See* Defendant's Reply Brief, Ex. 1.]

[10]  Local 17 was not a party-defendant in the *Stout* action.

Similarly, in this case, neither the statement attributed to Charlie Kerszykowski nor the statement attributed to William Catalfio constitute direct evidence of discrimination.  Neither Kerszykowski nor Catalfio was a decisionmaker with respect to Local 17's referral decision with respect to Ms. Wrobbel and Asplundh.  It is undisputed that Catalfio was not even an employee of Local 17 at the time; he was working for Asplundh.  And, the record evidence in this case shows that the statement attributed to Kerszykowski was made 15 years ago, long before the disputed referral at issue in this case.[11]

As for Plaintiff's claim of the lack of female union officers or executives and Judge Battani's opinion that Debra Stout's out-of-work list evidence constituted "direct evidence" of Asplundh's discrimination in its hiring of Stout, none of this "evidence" is evidence that "requires the conclusion" that Local 17 discriminated against Plaintiff Wrobbel with respect to her referral for employment with Asplundh in March of 2004.

The foregoing discussion makes clear that Plaintiff has not presented direct evidence of discrimination.  Therefore, to make out a *prima facie* case, Plaintiff will have

---

[11]  Though Plaintiff claims that Kerszykowski "described women as cunts at union meetings," Plaintiff's characterization of the statement is not entirely accurate.  The only record evidence concerning any sexually derogatory comment having been made by Kerszykowski is the deposition testimony of Rebecca Mayfield that "sometime between 1990 and 1993," she overheard Kerszykowski say to someone else that "they would never get within a cunt's hair of this place."  *See* Mayfield Dep., Plaintiff's Ex. LL, pp. 94-96. Mayfield, however, did not know the context in which the comment was made or what Kerszykowski was referring to.  All she could say was "It was something he said to somebody. . . .  They were asking him a question about something."  *Id.* at 95.

13

to satisfy the *McDonnell Douglas*/*Burdine* standards.

b.    Application of the *McDonnell Douglas* Paradigm[12]

Under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817 (1973), to set forth a *prima facie* case of discrimination based on a union's failure to refer for employment, a plaintiff must show that (1) she is a member of a protected class; (2) she was qualified for a job referral; (3) she was not referred despite her qualifications; and (4) a person outside the protected class with similar qualifications was referred. *Alexander v. Local 496, Laborers Int'l Union*, 177 F.3d 394, 403 (6th Cir. 1999); *Herron v. Intern. Ass'n of Bridge Structural and Ornamental Iron Workers, supra*, 134 F.3d 371, 1998 WL 45483 at *6 (6th Cir. 1998).

Once a plaintiff establishes a *prima facie* case of discrimination, the burden of production then shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the defendant's action.  *DiCarlo v. Potter*, 358 F.3d 408, 414 (6th Cir.2004). If the defendant carries this burden, the plaintiff must prove that the legitimate reasons offered by the defendant were in fact a pretext for discrimination.  *Id*. at 414-15.

With respect to the *prima facie* case, the parties do not dispute that Plaintiff was a

---

[12] The *McDonnell Douglas* paradigm, although having its genesis in the employment discrimination context, is also applicable in cases alleging discriminatory treatment by labor unions.  *See e.g., Herron v. Intern. Ass'n of Bridge, Structural and Ornamental Iron Workers*, 134 F. 3d 371, 1998 WL 45483 at * 6 (6th Cir. 1998); *Alexander v. Local 496, Laborers Intern. Union of North America*, 778 F. Supp. 1401 (N.D. Ohio 1991); *Mosby v. AFSCME Intern. Union*, 2006 WL 758638 at *6 (D. Conn. 2006).

14

member of a protected class or that she was qualified for a referral.  However, there is material dispute of fact as to whether Plaintiff was "referred" for employment with Asplundh.  Defendant claims that Plaintiff was "verbally" referred to Asplundh in a telephone conversation Local 17's Assistant Business Manager Timothy Head had with Bill Catalfio of Asplundh.  Head testified that upon referral, Catalfio verbally rejected Plaintiff, without offering any reason.

Plaintiff, however, points out that in Asplundh's Response to her EEOC charge of discrimination, Asplundh stated that all of the applicants referred to Asplundh after it was awarded the Detroit Edison contract "were required to bring a 'referral slip' from Local 17."  *See* Plaintiff's Ex. 7, p. 3.  Plaintiff further has established that males who were hired by Asplundh *did* get a written referral from Local 17.  *See* Patrick McDonagh Dep., Plaintiff's Ex. MM, p. 20; Michael Fielding Dep., Plaintiff's Ex. HH, p. 48; James Kitzke Dep., Plaintiff's Ex. R, p. 32; Asplundh's Supplemental Response to Requests for Production of Documents, Plaintiff's Ex. K.  Local 17 has not disputed this evidence.

Plaintiff, thus, has presented evidence showing that a *written* referral was required for job referrals to Asplundh.  Although this is contradicted by the testimony of Local 17 Assistant Business Agent Head, it is inescapable that the issue presents a material issue of fact, because if, as Plaintiff's evidence indicates, Asplundh required a written referral and males referred to Asplundh were given written referral slips but Plaintiff, a female, was not given one, a *prima facie* "denial of referral" discrimination claim is established.  The testimony of employers other than Asplundh who did not require written referrals does

15

not negate Plaintiff's *prima facie* claim.

The parties here make no effort to argue anything other than the sufficiency of Plaintiff's *prima facie* case. No effort has been made to make out the other *McDonnell Douglas prima facie* elements. Notably absent from the Defendant's briefs is any proffer of a legitimate, non-discriminatory reason for failing to refer Wrobbel in writing. Thus, Defendant has not rebutted the presumption Wrobbel raised via her *prima facie* case, and Plaintiff, accordingly, made no argument of pretext.

For these reasons, Defendant's Motion for Summary Judgment on Plaintiff's claim that Local 17 discriminatorily denied her a referral for employment with Asplundh in violation of 42 U.S.C. § 2000e-2(c)(2) and M.C.L. § 37.2204(b) will be DENIED.

2.      Plaintiff's Claim that Local 17 Conspired with Asplundh to Prevent
        Asplundh from Hiring Her Is Not Within the Scope of her EEOC Charge

Seeking to hold Local 17 liable for Asplundh's refusal to hire her, Plaintiff also claims that Local 17 conspired with Asplundh to prevent her from being hired, in violation of 42 U.S.C. § 2000e-2(c)(3). However, this claim was not included in Wrobbel's EEOC charge.

It is well-settled that before a person who claims to have been discriminated against in violation of Title VII may seek relief in federal court, the claimant must first unsuccessfully present his or her claim to the EEOC (or the equivalent state entity that has authority to grant or seek relief with respect to the alleged unlawful practice.) *Ang v. Procter & Gamble Co.*, 932 F.2d 540, 545 (6th Cir. 1991); *National R.R. Passenger*

16

*Corp. v. Morgan*, 536 U.S. 101, 109, 122 S.Ct. 2061, 2070 (2002). *See also Brown v. General Services Administration*, 425 U.S. 820, 832, 96 S.Ct. 1961, 1967-68, 48 L.Ed.2d 402 (1976); *Haithcock v. Frank*, 958 F.2d 671, 675 (6th Cir. 1992); *Parsons v. Yellow Freight Systems, Inc.*, 741 F.2d 871, 873 (6th Cir.1984). In *Parsons*, the Sixth Circuit explained the reason for requiring exhaustion of administrative remedies:

> The requirement that the plaintiff exhaust administrative remedies prior to instituting suit is intended to ensure that the [Equal Employment Opportunity] Commission will have been afforded an opportunity to attempt conciliation and voluntary settlement, "the preferred means for resolving employment discrimination disputes."

*Id.* at 873 (citation omitted).

Exhaustion also requires that a plaintiff's Title VII complaint be limited to the scope of the EEOC charge or can reasonably be expected to grow out of the charge. *See*, *Abeita v. Transamerica Mailings, Inc.*,159 F.3d 246, 254 (6th Cir. 1996); *Ang v. Procter & Gamble Co., supra*, 932 F.2d at 544-45; *EEOC v. Kimberly-Clark Corp.*, 511 F.2d 1352, 1363 (6th Cir. 1975), *cert. denied*, 423 U.S. 994 (1976); *Tipler v. E. I. duPont deNemours & Co.*, 443 F.2d 125, 131 (6th Cir. 1971). Although the Sixth Circuit has, in the past, characterized this requirement as "jurisdictional," *see e.g., Strouss v. Mich. Dep't of Corr.,* 250 F.3d 336, 342 (6th Cir.2001) ("It is well settled that federal courts do not have subject matter jurisdiction to hear Title VII claims unless the claimant explicitly files the claim in an EEOC charge or the claim can be reasonably expected to grow out of the EEOC charge."), in the aftermath of the Supreme Court's decision in *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 126 S.Ct. 1235 (2006), the assertion that the exhaustion requirement

17

is jurisdictional is no longer accurate.

In *Arbaugh*, the Supreme Court held that Title VII's definition of "employer," which limits the application of Title VII to employers who have at least 15 employees, "is an element of a plaintiff's claim for relief, not a jurisdictional issue." 546 U.S. at 509, 515-16. In reaching this conclusion, the Court adopted the following rule of construction to determine whether a statutory requirement is jurisdictional in nature:

> If the Legislature clearly states that a threshold limitation on a statute's scope shall count as jurisdictional, then courts and litigants will be duly instructed and will not be left to wrestle with the issue. . . . But when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as non-jurisdictional in character.

*Id.* at 515-16 (citation omitted).

In light of *Arbaugh*, the Sixth Circuit reconsidered its previous holding in *Weigel v. Baptist Hosp. of E. Tenn*, 302 F.3d 367, 379 (6th Cir. 2002) that "federal courts do not have subject matter jurisdiction to hear ADEA claims unless the claimant explicitly files the claim in an EEOC charge or the claim can reasonably be expected to grow out of the EEOC charge," and in *Allen v. Highlands Hosp. Corp*, 545 F.3d 387, 401-02 (6th Cir. 2008), held,

> [A]lthough administrative exhaustion is still a statutory prerequisite to maintaining claims brought under the ADEA, the prerequisite does not state a limitation on federal courts' subject matter jurisdiction over such claims.

*Id.* at 401.

The language and structure of Title VII and the ADEA are substantially similar with regard to their provisions setting forth administrative filing requirements and federal

18

court jurisdiction.  In both statutes, the provisions setting forth the administrative filing and exhaustion requirements, 42 U.S.C. § 2000e-5(f)(1)[13] and 29 U.S.C. § 626(d),[14] "do[] not speak in jurisdictional terms or refer in any way to the jurisdiction of the district court."  *See Arbaugh*, 546 U.S. at 515.  The term "jurisdiction" does not appear in the text or title of either of these administrative exhaustion provisions.

Both statutes, however, contain other separate provisions that do speak directly to jurisdiction.  In Title VII, 42 U.S.C. § 2000e-5(f)(3) provides:

> Each United States district court and each United States court of a place subject to the jurisdiction of the United States shall have jurisdiction of actions brought under this subchapter.

*Id.*

_____

[13]  42 U.S.C. § 2000e-5(f)(1) provides, in relevant part:

If a charge filed with the Commission. . . is dismissed by the Commission or if within one hundred and eighty days from the filing of such charge the Commission has not filed a civil action. . . or . . . has not entered into a conciliation agreement to which the person aggrieved is a party, the Commission. . . shall so notify the person aggrieved and within ninety days after the giving of such novice a civil action may be brought against the respondent named in the charge . . . by the person claiming to be aggrieved.

[14]  29 U.S.C. § 626(d) provides, in relevant part:

No civil action may be commenced by an individual under this section until 60 days after a charge alleging unlawful discrimination has been filed with the Commission.  Such a charge shall be filed (1) within 180 days after the alleged unlawful practice occurred; or (2) in a case to which section 633(b) of this title applies, within 300 days after the alleged unlawful practice occurred, or within 30 days after receipt by the individual of notice of termination of proceedings under State law, whichever is earlier.

The ADEA similarly has a separate provision titled "Civil actions; persons aggrieved; *jurisdiction*, judicial relief; termination of individual action upon commencement of action by Commission; jury trial."  29 U.S.C. § 626(c) (Emphasis added.)  This provision states:

> (1) Any person aggrieved may bring a civil action in any court of competent jurisdiction for such legal or equitable relief as will effectuate the purposes of this chapter: Provided, That the right of any person to bring such action shall terminate upon the commencement of an action by the Equal Employment Opportunity Commission to enforce the right of such employee under this chapter.

29 U.S.C. § 626(c)(1).

In *Allen*, the Sixth Circuit noted the express jurisdictional statements in § 626(c) and the lack of any jurisidictional reference in § 626(d), and concluded that:

> Congress did not. . . clearly state in § 626(c)(1) that filing a charge with the EEOC is a precondition to the federal courts' jurisdiction over ADEA claims.  We therefore hold that the administrative exhaustion requirement set forth in 29 U.S.C. § 626(d) is not jurisdictional in nature, but is instead best understood as a prudential prerequisite[15] to filing a claim in federal court.

545 F.3d at 402 (citing *Wilson v. MVM, Inc.*, 475 F.3d 166, 174-75 (3d Cir. 2007)

---

[15]  The *Allen* court's characterization of the exhaustion requirement as a "prudential" prerequisite may not be entirely accurate.  The *Allen* court appears to have borrowed this term from the Third Circuit's decision in *Wilson v. MVM, Inc.*, 475 F.3d 166 (3rd Cir. 2007).  *See Allen*, 545 F.3d at 402.  In *Wilson*, the Third Circuit explained that "[a] prudential exhaustion requirement is generally judicially created, aimed at respecting agency autonomy by allowing it to correct its own errors."  *Id.* at 174 (citation omitted.)  The ADEA exhaustion requirement, however, is not a "judicially created" requirement; rather, it is clearly a statutory requirement, created by Congress.  Therefore, the more accurate characterization is that the exhaustion requirement is  a "statutory prerequisite."

(footnote added).

The Court finds that Title VII's administrative exhaustion requirement should be treated the same as the ADEA's requirement -- exhaustion is a statutory prerequisite to filing suit; it is not a jurisdictional requirement.

Turning then to the instant action, Plaintiff's EEOC charge against Local 17 states only as follows:

> I am a member in good standing with [IBEW Local 17].  On or about March 22, 2004, I was denied a referral for employment.
>
> I am a woman with approximately 10 years of skilled work as an operator material handler.  Nevertheless, [Local 17] refuses to provide me with work referrals because of my sex, female. [Local 17] provides only males with work referrals throughout the state.  Females as a class are being denied referrals for employment solely because of their sex.
>
> I have been discriminated against by being denied employment referrals because of my sex, female, as well as other females, in violation of Title VII of the Civil Rights Act of 1964, as amended.

[Charge of Discrimination against IBEW Local 17, Plaintiff's Ex. O.]

Nowhere in Plaintiff's Charge of Discrimination against Local 17 does Plaintiff allege that Local 17 conspired with Asplundh or caused Asplundh to deny her employment because she is a female.  Her complaint was that she was denied a referral for employment.  Nor does the Court find that a claim of conspiring with Asplundh, or of causing Asplundh to deny her employment might reasonably grow out of her charge that the union denied her a referral.  Plaintiff, therefore, has failed to exhaust her administrative remedies with regard to her claim that Local 17 conspired with Asplundh

21

or caused Asplundh to deny her employment because she is a female.  This failure to exhaust subjects this claim to dismissal.  *See Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990) (failure to timely exhaust administrative remedies is an appropriate basis for dismissal of a Title VII action).

However, "because administrative exhaustion does not raise a jurisdiction question. . . [the court] may decline to decide the issue if reaching the merits of [the unexhausted claim] provides a clearer basis for the disposition of the case."  *Allen, supra*, 545 F.3d at 403 (citing *State of Ohio ex rel. Celebrezze v. Nuclear Regulatory Cmm'n*, 868 F.2d 810, 813 (6th Cir. 1989).[16]  The Court finds that this is the better way to proceed with this matter because, as discussed below, the Court finds that even if Plaintiff had fully exhausted her Title VII conspiracy claim, that claim fails on the merits.

_____

[16]  Furthermore, because the exhaustion requirement is not jurisdictional, "like a statute of limitations, [it] is subject to waiver, estoppel, and equitable tolling."  *See Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982); *National R.R. Passenger Corp. v, Morgan, supra*, 536 U.S. at 113.  Although Local 17 did raise "failure to exhaust" as an Affirmative Defense to Plaintiff's Complaint [*see* Answer to Complaint, Dkt. # 5, p. 6 ¶ 5; Answer to Amended Complaint, Dkt. # 119, p. 7 ¶ 2], Defendant made no "failure to exhaust"argument in either its original Motion for Summary Judgment or its renewed Motion.  Therefore, though the Court might nonetheless raise the issue itself and *sua sponte* dismiss Plaintiff's Title VII conspiracy claim on failure to exhaust grounds, *see e.g.,* 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (noting that "[e]ven if a party does not make a formal motion under Rule 12(b)(6), the district judge of his or her own initiative may note the inadequacy of the complaint and dismiss it for failure to state a claim.")*,* the Court believes it would be inappropriate to do so in this case because it finds that Defendant has at least impliedly waived reliance on any such argument by failing to raise it as a basis for summary judgment despite having had two opportunities to do so.

3.    Plaintiff Has Failed to Come Forward With Any Evidence Showing that Local 17
Caused Asplundh to Discriminate Against Her.

§ 2000e-2(c)(3) makes it unlawful for a labor union "to cause or attempt to cause

an employer to discriminate against a qualified individual."  Plaintiff Wrobbel, however,

has failed to come forward with evidence showing that Local 17 "caused or attempted to

cause" Asplundh not to hire her because she is a female.  At best, the evidence presented

by Plaintiff evidence shows passive acquiescence on the part of the Union.  While a union

may be held liable under subsection (c)(3) if it instigates or actively supports

discriminatory acts, *Dixon v. Int'l Brotherhood of Police Officers*, 504 F.3d 73, 84-85 (1st

Cir. 2007), "[p]assivity or acquiescence in the face of discrimination by an employer is

not sufficient to establish liability on the part of the union."  *EEOC v. Int'l Ass'n of*

*Firefighters, Local 109*, 2000 WL 33739179 (S.D. Ohio 2000) (citing *Goodman v.*

*Lukens Steel Co.*, 482 U.S. 665, 666 (1987).  *See also Burden v. Int'l Longshoreman's*

*Ass;n, Local # 1410*, 510 F. Supp. 2d 618, 623 (S.D. Ala. 2007) (union president's

comments to woman complaining about workplace harassment that the harassment was

"only normal because she was an attractive woman" may have constituted passive

acquiescence, it did not constitute actionable active support.  "[A] union may actively

support discrimination if it refuses to file a grievance on the plaintiff's behalf."  *Id.*)

Furthermore, as the court explained in *Eliserio v. United Steel Workers*, 398 F.3d

1071, 1076-77 (8th Cir. 2005), section 2000e-2(c) contains "no language imposing upon

unions an affirmative duty to investigate and take steps to remedy employer

23

discrimination." *Id.* "Without the filing of a written grievance. . . the union [i]s under no obligation to take further action on [the employee's] behalf." *Firefighters, supra*, 2000 WL 32739179 at * 8.  Plaintiff here never filed any grievance to challenge the referral process or her rejection by Asplundh.

For these reasons, the Court concludes that Plaintiff has failed to make out a *prima facie* claim of violation of 42 U.S.C. § 2000e-2(c)(3).

4.     Plaintiff's Elliott-Larsen Conspiracy/Aiding and Abetting Claim is Without Legal Merit

M.C.L. § 37.2701 provides that "[t]wo or more persons shall not conspire to. . . aid, abet . . . a person to engage in a violation of this act [or] attempt. . . to commit an act prohibited by this act."  M.C.L. § 37.2701(b), (c).  Plaintiff claims that Local 17 violated this provision of the Elliott-Larsen Act by "helping orchestrate a situation in which [she] would be denied work."  [Plaintiff's Response Brief., p. 16.]

A civil conspiracy is the "combination of two or more persons, by some concerted action, to accomplish a criminal or unlawful purpose, or to accomplish a lawful purpose by criminal or unlawful means." *Admiral Ins. Co. v. Columbia Casualty Ins.*, 194 Mich.App. 300, 313 (Mich.App.1992); *Pineau v. Comau PICO*, 2006 WL 846750 (Mich. App. 2006). "All those who, in pursuance of a common plan to commit a tortious act, actively take part in it and further it by cooperation or request, or who lend aid or encouragement to the wrongdoer, or who ratify and adopt the acts done for their benefit, are equally liable with him." *Rosenberg v. Rosenberg Bros. Special Account*, 134 Mich.App. 342, 354 (1984).  Each defendant must proceed "tortiously, which is to say with intent to commit the tort or with negligence." *Id.*  Thus, a plaintiff must present evidence of an alleged conspirator's discriminatory animus or intent under § 701(b), in addition to some concerted action to aid, abet, incite, or compel someone to violate a person's civil rights. *DeBrow v. Century 21 Great Lakes, Inc.*, 1996 WL 33360653 (Mich. App. 1996).  However, one who commits an innocent act which furthers the

25

tortious purpose of another person is not acting in concert with him.  *Rosenberg, supra*;

*see also Pineau, supra*.  In a civil conspiracy action, "the gist or gravamen of the action is

not the conspiracy but is the wrongful acts causing the damages." *Roche v. Blair*, 305

Mich. 608, 614. The cause of action does not result from the conspiracy but from the

actions committed.  *Id.*

Plaintiff here cannot meet show that Local 17 engaged in a concerted action with

Asplundh to deny her a job with Asplundh because she is a woman.  Plaintiff's deposition

testimony establishes that she has no facts to support her conspiracy theory:

> Q:     Now, I asked you once before whether you had any evidence that
> Local 17 conspired with Asplundh.  You know what conspired
> means, don't you?
>
> A:     Yes.
>
> Q:     Conspired with Asplundh to prevent you from being referred out or
> prevent you from being hired. . . .
>
>                So what I want to ask you again is do you have
> any evidence that Local 17 was in cahoots with Asplundh and
> that they were, Local 17 was trying to prevent you from being
> hired by Asplundh.
>
> A:     Like I said, I had called Tim [Head], and asked him why I wasn't
> getting a job, I had been told Asplundh did not hire females.
>
> Q:     Did you tell that to Tim?
>
> A:     No.
>
> Q:     Okay.  But you knew that at the time you called Tim, right?
>
> A:     Right, and I asked him how come I didn't get the job, he said it
> didn't matter, Asplundh didn't want to hire me. . . .  I did ask Tim

why they had rejected me and he said they didn't have to give a
reason. . . .

Q:      Other than that, is there any other evidence that you have that Local
        17 conspired with Asplundh to prevent you from being hired?

A:      I guess because being a female, being the only female yard person or
        operator, they still wouldn't hire me.  All the other guys had all their
        jobs. . . .

                And again, when I asked Tim why, they didn't have to
        give a reason.  Why was I the only yard guy that didn't get a
        job, no reason.

Q:      Did you ever tell Mr. Head that you thought it was because of your
        gender, because of your sex?

A:      I've never told Tim that.

[Wrobbel Dep., pp. 73-76.]

Plaintiff's testimony demonstrates that Plaintiff's allegations of a conspiracy

between Local 17 and Asplundh are just that -- allegations based upon her own subjective

speculation.  She has come forward with no evidentiary facts to support a finding that the

Union and Asplundh acted in concert to discriminate against her.  And, it is well-settled

that subjective beliefs untethered to the evidence will not support a substantive

discrimination claim.  *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 585 (6th Cir.1992) (a

plaintiff's "conclusory allegations and subjective beliefs. . . are wholly insufficient

evidence to establish a claim of discrimination as a matter of law."); *Abedesi v. Univ. of

Tennessee*, ___ F.3d ___, 2009 WL 2031865 (6th Cir., July 15, 2009).  Therefore, the

Court will grant Defendant's Motion for Summary Judgment on Plaintiff's Elliott-Larsen

conspiracy claim.

<u>CONCLUSION</u>

For the reasons stated above in this Opinion and Order,

IT IS HEREBY ORDERED that Defendant's Motion for Summary Judgment is granted, in part, and denied, in part.  Defendant's Motion is GRANTED with respect to Plaintiff's claims of violation of 42 U.S.C. § 2000e-2(c)(3) and M.C.L. § 37.2701. Defendant's Motion is DENIED with respect to Plaintiff's claims of violation of 42 U.S.C. § 2000e-2(c)(2) and M.C.L. § 37.2204(b).


<u>s/Gerald E. Rosen</u>
Chief Judge, United States District Court

Dated:  July 28, 2009

I hereby certify that a copy of the foregoing document was served upon counsel of record on July 28, 2009, by electronic and/or ordinary mail.

<u>s/Ruth Brissaud</u>
Case Manager