UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GAIL WROBBEL,

        Plaintiff,                     CASE NUMBER: 07-10110
                                                  HONORABLE VICTORIA A. ROBERTS

v.

INTERNATIONAL BROTHERHOOD OF
ELECTRICAL WORKERS, LOCAL 17,
a labor organization,

        Defendant.
_____/

## ORDER DENYING DEFENDANT'S MOTION IN LIMINE

**I.    INTRODUCTION**

This matter is before the Court on a Motion in Limine by the International Brotherhood of Electrical Workers, Local 17 ("the Union"), for Admission of Evidence Relating to Amount that Plaintiff Wrobbel Received in Settlement of her Claims Against Asplundh (Dkt. #139).

For the reasons that follow, the Court **DENIES** the motion.

**II.    BACKGROUND**

In January 2007, Plaintiff Gail Wrobbel filed this action against Asplundh Construction Corporation ("Asplundh"), Asplundh Tree Expert Company ("Asplundh Tree") and the International Brotherhood of Electrical Workers, Local 17 ("the Union"). Plaintiff claimed that, because she is a woman, the defendants conspired to prevent her from working for Asplundh, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. Plaintiff sought various types of damages, plus costs and fees,

for which she claimed Asplundh, Asplundh Tree and the Union were jointly and severally liable.

The parties dismissed Asplundh Tree by stipulation in July 2007. On October 23, 2008, Plaintiff and Asplundh reached a monetary settlement, leaving the Union as sole defendant. On October 31, 2008, Plaintiff amended her complaint, adding a claim for discrimination under Michigan's Elliot-Larsen Civil Rights Act, Mich. Comp. Laws § 37.2101 et seq. Plaintiff's amended complaint alleged that, due to her gender, the Union: (1) refused to "refer her out" to work for Asplundh; and (2) conspired with Asplundh to prevent her from being hired.

The Union moved for summary judgment, which Chief Judge Gerald E. Rosen granted, in part, on July 28, 2009 (Dkt. #125). *Wrobbel v. IBEW, Local 17*, 638 F. Supp. 2d 780 (E.D. Mich. 2009). The Chief Judge held that, while Plaintiff stated a prima facie claim of gender discrimination, she failed to provide evidence that the Union and Asplundh acted in concert to discriminate against her. *Id.* at 790-95.

The Union filed this motion on February 1, 2010, asking the Court to rule on whether Plaintiff's settlement with Asplundh can serve to offset a verdict against the Union. The Union also requested that Plaintiff disclose the amount of the settlement prior to trial, in the interest of facilitating settlement discussions. On March 2, the Court issued a Protective Order for Plaintiff to disclose the terms of the Asplundh settlement to the Union, for the limited purpose of weighing her settlement demands against the risks and expenses associated with trial (Dkt. #142). The Court reserved a ruling on whether the Union can claim the Asplundh settlement as a setoff.

Plaintiff argues the Court should continue to reserve this matter until after trial.

The Court disagrees; whether a settlement may offset damages against a nonsettling defendant, is a question of law, which turns neither upon the form, nor the amount, of a jury's verdict. Moreover, a ruling may clarify the stakes of the litigation, thereby increasing the chances of reaching a settlement. Finally, the Court has all the relevant facts before it. The issue is ripe for review.

## III. DISCUSSION

Aside from several references to "the common law," the parties' briefs do not clearly identify or discuss which legal framework governs this inquiry. Therefore, before addressing the substance of the Union's motion, the Court makes a preliminary determination of applicable law.

### A. Governing Law

Like other civil-rights statutes, Title VII prohibits certain conduct and creates causes of action against violations of certain individual rights. However, the Act does not supply a comprehensive legal framework for managing every aspect of civil rights litigation. For instance, the law does not address whether, in multidefendant Title VII claims, settlements with some defendants may be used to offset jury awards against others. *See Mavrinac v. Emergency Med. Ass'n of Pittsburgh*, No. 04-CV-1880, 2007 WL 4190714, 2007 U.S. Dist. LEXIS 86113, at *17 (W.D. Pa. Nov. 21, 2007) (unpublished) ("the federal law, as well as the legislative history of Title VII, are silent on the issue of the availability of set off to a nonsettling defendant in a Title VII action.").

In anticipation of this problem, Congress enacted 42 U.S.C. § 1988. Section 1988 is mostly known for the attorney's fees provision of subsection (b). However, §

3

1988(a) is a choice-of-law provision, which gives courts the common-law tools to implement civil-rights statutes. In *Moor v. County of Alameda*, 411 U.S. 693 (1973), the Supreme Court described § 1988(a) in these terms:

> [A]s is plain on the face of the statute, [§ 1988] is intended to complement the various acts which . . . create federal causes of action for the violation of federal civil rights. Thus, § 1988 specifies that "the jurisdiction in civil and criminal matters conferred on the district courts by the provisions of this chapter [Civil Rights] and Title 18, for the protection of all persons in the United States in their civil rights, and for their vindication, shall be exercised and enforced in conformity with the laws of the United States." But inevitably existing federal law will not cover every issue that may arise in the context of a federal civil rights action. Thus, § 1988 proceeds to authorize federal courts, where federal law is unsuited or insufficient "to furnish suitable remedies," to look to principles of the common law, as altered by state law, so long as such principles are not inconsistent with the Constitution and laws of the United States.

*Id.* at 702-03 (footnotes omitted) (*quoting* 42 U.S.C. § 1988(a) (third alteration in *Moor*)). *Accord Robertson v. Wegmann*, 436 U.S. 584, 588 (1978).

Since Title VII is "deficient" on the issue of setoffs, § 1988(a) directs the Court to apply Michigan common and statutory law, provided it comports with Title VII's policies and purposes. *Cf. Mavrinac*, 2007 U.S. Dist. LEXIS 86113, at *17-20 (applying Pennsylvania setoff law in Title VII lawsuit)*; Goad v. Macon County*, 730 F. Supp. 1425, 1430-31 (M.D. Tenn. 1989) (using Tennessee law to resolve setoff question in 42 U.S.C. § 1983 civil-rights action).

### B. Analysis

In 1995, the Michigan Legislature completely revamped the state's tort-legislation framework. The enactment of tort reform significantly altered the rules of liability which existed at common law, and reduced the necessity for setoffs.

Traditionally, concurrent tortfeasors in Michigan were "jointly and severally"

4

liable, meaning that where multiple tortfeasors caused a single or indivisible injury, each tortfeasor was individually liable for the entire judgment. *Kaiser v. Allen*, 746 N.W.2d 92, 480 Mich. 31, 37 (2008) (en banc); *Gerling Konzern Allgemeine Versicherungs AG v. Lawson*, 693 N.W.2d 149, 472 Mich. 44, 49 (2005) (en banc). However, recovery was limited by the fundamental principle that "a plaintiff is only entitled to one full recovery for the same injury." *Kaiser*, 480 Mich. at 39; *accord Great N. Packaging, Inc. v. Gen. Tire & Rubber Co.*, 399 N.W.2d 408, 154 Mich. App. 777, 781 (1986).

The rule of setoff emerged as a corollary of joint and several liability, and of the "one injury, single recovery" principle. *Kaiser*, 480 Mich. at 41 (Kelly, J., concurring). The rule stipulates that –

> where a negligence action is brought against joint tortfeasors, and one alleged tortfeasor agrees to settle his potential liability by paying a lump sum in exchange for a release, and a judgment is subsequently entered against the non-settling tortfeasor, the judgment is reduced *pro tanto* by the settlement amount.

*Thick v. Lapeer Metal Products*, 353 N.W.2d 464, 419 Mich. 342, 348 n.1 (1984).

The enactment of tort reform brought about two significant changes. First, Michigan eliminated joint and several liability in all but a few cases, and replaced it with several liability only. Mich. Comp. Laws ("M.C.L.") § 600.2956. Second, the Legislature mandated that the liability of each tortfeasor be allocated "by the trier of fact . . . , in direct proportion to the person's percentage of fault." M.C.L. § 600.2957(1).

The shift towards allocation of fault and several liability eliminated the common-law rationale for setoffs. Henceforth, "[t]here would be no need for a setoff because the tortfeasor-defendant not involved in the settlement would necessarily be responsible for an amount of damages distinct from the settling defendant on the basis of allocation of

5

fault." *Markley v. Oak Health Care Inv. of Coldwater, Inc.*, 660 N.W.2d 344, 255 Mich. App. 245, 255 (2003). Therefore, lawmakers proceeded to delete statutory codifications of the setoff rule. *See id.* (*citing* M.C.L. § 600.2925d).

The central provision of Michigan's comparative liability system is M.C.L. § 600.6304, which sets forth the procedure for allocating fault among multiple tortfeasors.

> (1) In an action based on tort or another legal theory seeking damages for personal injury, property damage, or wrongful death involving fault of more than 1 person, including third-party defendants and nonparties, the court, unless otherwise agreed by all parties to the action, shall instruct the jury to answer special interrogatories or, if there is no jury, shall make findings indicating both of the following:
> (a) The total amount of each plaintiff's damages.
> (b) The percentage of the total fault of all persons that contributed to the death or injury, including each plaintiff and each person released from liability under [the settlement provision of] section 2925d, regardless of whether the person was or could have been named as a party to the action.
> (3) The court shall determine the award of damages to each plaintiff in accordance with the findings under subsection (1) . . . , and shall enter judgment against each party, including a third-party defendant, except that judgment shall not be entered against a person who has been released from liability [by settlement] as provided in section 2925d.
> (4) Liability in an action to which this section applies is several only and not joint. Except as otherwise provided . . . , a person shall not be required to pay damages in an amount greater than his or her percentage of fault as found under subsection (1). . . .

M.C.L. § 600.6304.

Michigan's tort-reform legislation effectively rendered setoff obsolete. Under the current system, "a settlement payment cannot be deemed to constitute a payment toward a loss included in a later damage award entered against the nonsettling tortfeasor." *Markley*, 255 Mich. App. at 255. Moreover, "[t]here exists little danger, in cases of several liability, that a plaintiff will receive recovery beyond the actual loss." *Id.*

6

(footnote omitted).  *See also Kaiser*, 480 Mich. at 42 (Kelly, J., concurring) ("When liability is several, each tortfeasor ordinarily will be liable for the percentage of damages attributable to his or her own negligence.  A setoff will be unnecessary because, even without it, the plaintiff will recover full compensation only once.") (footnote omitted); *Herteg v. Somerset Collection GP, Inc.*, No. 227936, 2002 WL 31105000, 2002 Mich. App. LEXIS 2355, at *20-21 (Mich. Ct. App. Sept. 20, 2002) (unpublished) ("this statutory scheme reflects a clear Legislative intent to abolish the rule requiring offset and replace it with a several liability system to apportion damages.  Therefore, the common-law rule is abrogated." (citation omitted)).

The Union argues that, despite the enactment of tort reform, Michigan continues to follow the common-law setoff rule.  Indeed, there are several exceptions where joint and several liability survives, *see e.g.*, M.C.L. § 600.6304(6) (in medical malpractice cases, if plaintiff is without fault); § 600.6312 (if the defendant's act or omission constitutes a certain crime), and where nonsettling defendants may still claim setoffs. The two post-1995 Michigan cases on which the Union relies deal with these types of exceptions, but they do not apply here.  *See Kaiser*, 480 Mich. at 36 ("the common-law setoff rule remains the law in Michigan for vehicle-owner vicarious-liability cases."); *Markley*, 255 Mich. App. at 256-57 (setoff rule remains applicable in medical malpractice claims, if defendants are jointly and severally liable).

The Court holds that, under Michigan's reformed tort-liability scheme, the Union is not entitled to offset a jury award with the proceeds of the Asplundh settlement. Furthermore, the unavailability of setoff under Michigan law is not inconsistent with the policies and purposes of Title VII.  42 U.S.C. § 1988(a); *Moor*, 411 U.S. at 703.  Besides

deterring unlawful discrimination in employment, the main objectives of Title VII are to "make persons whole for injuries suffered," *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 418 (1975); *Suggs v. ServiceMaster Educ. Food Mgmt.*, 72 F.3d 1228, 1233 (6th Cir. 1996), and to encourage parties to settle their disputes voluntarily before resorting to litigation, *Occidental Life Ins. Co. v. EEOC*, 432 U.S. 355, 368 (1977). Michigan's tort-liability framework is entirely consistent with these objectives; some would argue that eliminating the opportunity for setoffs, actually increases the likelihood of settlement. *See Banks v. Yokemick*, 177 F. Supp. 2d 239, 262 (S.D.N.Y. 2001) (in some cases, a defendant may opt to go to trial, on the chance that the jury's award for damages will be smaller than the combined amount of the settlements reached by other defendants).

### C. Allocation of Fault for Plaintiff's Alleged Injury

The Union's setoff request is based on its contention that Plaintiff suffered a single injury, which resulted from either concurrent or consecutive actions by the Union and Asplundh. Therefore, the Union argues it should not be liable for all of Plaintiff's emotional distress.

Whether and to what extent the Union and Asplundh share responsibility for Plaintiff's injuries, is a question for the jury to decide. *See Michie v. Great Lakes Steel Div., Nat'l Steel Corp.*, 495 F.2d 213, 216 (6th Cir. 1974) (*citing Maddux v. Donaldson*, 108 N.W.2d 33, 362 Mich. 425, 432-33 (1961)); *Oakwood Homeowners Ass'n v. Ford Motor Co.*, 258 N.W.2d 475, 77 Mich. App. 197, 218-19 (1977). Michigan's allocation-of-fault scheme allows the trier of fact to allocate liability "in direct proportion to the person's percentage of fault," regardless of whether all the alleged tortfeasors are

8

parties to the proceedings. M.C.L. § 600.2957(1). Asplundh's absence from trial does not preclude the Union from arguing to the jury that Asplundh contributed, in whole or in part, to Plaintiff's injuries. *See Rinke v. Potrzebowski*, 657 N.W.2d 169, 254 Mich. App. 411, 416-17 (2002) ("the plain and unambiguous language of the statutes . . . permits a defendant to argue that a nonparty is at fault though the nonparty cannot be identified." (footnote omitted)). However, neither the settlement's existence nor its terms may be revealed to the jury, unless the parties stipulate otherwise. *Brewer v. Payless Stations, Inc.*, 316 N.W.2d 702, 412 Mich. 673, 679 (1982).

If the jury finds that the Union bears sole responsibility for Plaintiff's injury, it may award compensatory damages against the Union. However, if it concludes that the Union and Asplundh are both liable, the jury must determine Plaintiff's total damages, and each party's respective percentage of fault. M.C.L. § 600.6304(1).

When instructing the jury on its allocation-of-fault duties, the Court contemplates using Michigan Civil Jury Instruction 42.05, Allocation of Fault of Parties and Identified Nonparties. Plaintiff and the Union should familiarize themselves with this and other relevant jury instructions, and with the applicable state statutes, including, but not limited to: M.C.L. §§ 600.2956, 600.2957, and 600.6304. Should this case proceed to trial, it will be the parties' responsibility to identify issues which may arise under Michigan's allocation-of-fault system, and to recommend the proper procedures for the Court to follow in applying Michigan law.

## IV. CONCLUSION

Under applicable Michigan law, the Union does not have the option to offset the Asplundh settlement against a jury award for damages. Therefore, the Union's Motion

in Limine for Admission of Evidence Relating to Amount that Plaintiff Wrobbel Received in Settlement of her Claims Against Asplundh, is **DENIED**.

**IT IS ORDERED.**

s/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated: March 12, 2010

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on March 12, 2010.

s/Linda Vertriest
Deputy Clerk